UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (Flint)

In re:

FERGUSON CONVALESCENT HOME, INC.,

Debtor.
_____/

Chapter 11
Case No. 16-30397-dof
Hon. Daniel S. Opperman

**OBJECTION TO DEBTOR'S DISCLOSURE STATEMENT
BY MCLAREN LONG TERM CARE PHARMACY**

McLaren Long Term Care Pharmacy ("McLaren"), by its counsel, Erman, Teicher, Zucker & Freedman, P.C. states its Objection to Debtor's Disclosure Statement [Doc. No. 78] as follows:

1. Debtor filed its First Amended Combined Plan of Liquidation and Disclosure Statement on July 26, 2016 [Doc. No. 78] (the "Disclosure Statement"). Because of the particular circumstances of this case, and specifically the issues surrounding the debtor-in-possession financing and related proposed sale of the Debtor, the Court modified the process relative to requesting information to be provided in the Debtor's disclosure statement. As a result, creditors and parties in interest were given until August 15, 2015 to file objections to the Disclosure Statement.

1

2. McLaren has both unsecured and administrative expense claims against the Debtor. McLaren has an unsecured claim in the amount of approximately $190,000.00 [Claim No. 2 in this matter], as well as an 11 U.S.C. §503(b)(9) claim in the amount of $3,328.79, and an 11 U.S.C. §503(b)(1) claim in the amount of $672.10.[1]

3. McLaren and Debtor are parties to the Service Agreement between Ferguson Convalescent Home and Visiting Nurse Services of Michigan (d.b.a. McLaren Pharmacy Services) dated September 20, 2013 (the "Services Agreement"), through which McLaren provides pharmaceutical, infusion services and medication consultive services to the Debtor. The Services Agreement provides, *inter alia*, for an automatic annual renewal, unless terminated by either party, a 60 day written notice provision for termination without cause, and a 30 day written notice provision for cause. The Services Agreement also contains an exclusivity provision which states that "McLaren Pharmacy Services will be the sole provider of pharmaceuticals for patients residing in SNF contracted facilities."

---

[1] The proof of claim filed by McLaren in this matter [Claim No. 2] includes the 503(b)(9) and 503(b)(1) administrative claims. On July 18, 2016, the Court entered its Order Granting Motion for (i) Allowance and Payment of its 11 U.S.C. § 503(b)(9) Claim and (ii) Allowance and Payment of Outstanding Administrative Expenses [Doc. No. 70]. The proof of claim will be amended upon receipt of payment pursuant to said order.

4. McLaren has continued to provide services and goods to Debtor under the Services Agreement, pursuant to previously entered orders in this matter. [*See,* Doc. Nos. 17, 18 and 76.]

5. McLaren believes that the Disclosure Statement does not contain adequate information sufficient to enable a creditor, such as McLaren, "to make an informed judgment about the plan." (11 U.S.C. §1125(a)(1)) In particular, McLaren believes that the following information is necessary:[2]

    a. McLaren would like the Debtor to identify its current Administrative Creditors[3] as well as those creditors who will continue to provide services to the Debtor post-confirmation.

    b. McLaren would like the Debtor to identify if Debtor or Purchaser is purchasing pharmaceutical, infusion services and medication consultive services from any source other than McLaren, or if either intends to purchase same from any other source.

    c. Debtor's Plan is based on a sale to Nationwide Healthcare Services, LLC ("NHS"). Neither the proposed Plan nor the Disclosure Statement provides any information about NHS. For instance, but not by limitation, where is NHS located? What is its financial wherewithal? How does a creditor know that

---

[2] Such information would have been requested by McLaren for inclusion in the plan if the process had not been modified in this case.
[3] Capitalized terms shall have the meanings set forth in the Plan and Disclosure Statement unless otherwise defined in this Objection.

3

NHS will be able to cure the arrearage on a proposed assumed contract? What other projects has NHS been involved in? Does NHS have a business plan regarding operations at Debtor's facility? How does NHS propose to operate the Debtor going forward? What will NHS change about the Debtor's operations to make it profitable going forward? Given the medical and professional expertise required for the operation of a long-term care facility such as the Debtor, fundamental information about the bona fides of the potential Purchaser is reasonable and necessary to make an informed decision about the Plan.

    d.  The Disclosure Statement (p. 34) references Causes of Action which the Debtor (or Purchaser) believes it has or may have against creditors, but does not list any specifics.[4] The Disclosure Statement (p. 35) provides: "Under the Plan, the Debtor sells and assigns to the Purchaser all of its right, title and interest in and to the Causes of Action, excluding the Avoidance Actions." In order to have a complete understanding of the impact of the Plan approval, the Disclosure Statement should specifically state whether the Debtor and/or Purchaser believes it has any Causes of Action against McLaren and similarly situated creditors who are expected to continue to provide goods and services for the operating of the facility.

---

[4] "The Debtor is not aware of any Causes of Action not otherwise set forth herein. Furthermore, the Debtor has not undertaken an analysis of what claims it may have under Chapter 5 of the Bankruptcy Code and the potential defenses thereto, and cannot make any representations as to their value. However, the Debtor has filed detailed schedules and a statement of financial affairs that disclose the Debtor's relevant pre-petition transfers". Disclosure Statement, pp. 34-35.

e. The Plan, at Article XI, details the process for objections to Claims. Possible objections to Claims are not disclosed in the Disclosure Statement. Similar to the concerns addressed in paragraph 5d, above, the Disclosure Statement should specifically state whether the Debtor and/or Purchaser believes it has any basis to object to the McLaren Proof of Claim.

f. There also appears to be an ambiguity and vagueness in the Plan that hinders a creditor making an informed analysis of the Plan. The Disclosure Statement indicates that there will be a sale to NHS subject to certain conditions, and gives a significant variable on the purchase price, either "$800,000 in cash or the assumption of indebtedness by the Purchaser, which amount shall be subject to adjustment and shall be sufficient to provide for payment of all obligations under the Plan via assumption or cash payment."

On the other hand, the Plan, §3.4.1(b)—Class IV—Unsecured Claims provides for the following payment structure for unsecured creditors:

3.4.1 The Holders of Allowed Class IV shall be treated in one of the following ways:
(a) Holders of Allowed Class IV Claims whose claim amount is $2,000 or less, and any other Class IV Claim holder who elects to decrease its claim amount to $2,000, shall be paid seventy five percent of Allowed Claim (as reduced, if applicable) on the date that is three months after the Effective Date.
(b) Allowed Class IV Claims not qualifying for or electing treatment under section (a), shall receive payment from the Debtor or the Purchase [sic] of an amount equal to 105% of the face amount of each invoice for material or services provided by the Class IV Claimant to the Debtor or the Purchaser during the year immediately following the Confirmation Date, and an amount equal to 110% of the face amount of each invoice during the second year following the Confirmation

5

Date. The 5% or 10% (as applicable) overpayment on each invoice shall be applied toward repayment of the Class IV Claimant's Allowed Claim. Debtor or Purchaser, as appropriate, shall be responsible to pay the increased amount on each invoice for post-confirmation services until the first to occur of (i) payment in full of the Class IV Claimant's Allowed Claim, or (ii) the second anniversary of the Confirmation Date.

This provision appears inconsistent with the statement in the Disclosure Statement that the Purchaser will be assuming an of the Debtor's liabilities. Thus, the Disclosure Statement needs to quantify the amount that Purchaser will pay on the outstanding debt. Creditors need to be able to determine if the sale, as proposed, is reasonable and will result in the highest and best payment to creditors.

g. The Disclosure Statement does not provide sufficient information on the sale process, does not provide any benchmark dates relative to the sale, does not explain why there is no competitive bidding, and does not provide sufficient detail as to the conditions for closing of the sale to NHS. All of this information is necessary for a creditor to evaluate the appropriateness of the sale as a mechanism to accomplish the Plan.

h. The Disclosure Statement does not specifically reference assumption of contracts, although assumption of contracts is referenced in the Plan. McLaren would like Debtor to state in the Disclosure Statement the proposed payment terms for assumption of the McLaren Services Agreement as, if not assumed, McLaren will have a different perspective on the Plan as it will be a general unsecured creditor based on its contract rejection claim.

6

i. The Debtor's financial information does not include the year 2015. This information provides a significant snapshot of current operations and should be included.

j. There is no foundation for the Plan projections attached as Exhibit D, and the projections attached are only for a four (4) month period. The projections do not enhance the analysis of the Plan. It is necessary for a creditor to have information on the changes in operations, if any, that NHS will make, and to describe in sufficient detail how the Debtor be operated on a going-forward basis that will be different than how it has operated in the past.

k. There is no information on what will happen if the sale to NHS is not approved or does not close.

l. There is not sufficient information regarding the Interim Management Agreement. What are the fees that will be paid to the Interim Manager? What are the proposed terms of the Interim Management Agreement? How long with the Interim Manager be in place? What are the conditions for termination of the Interim Manager?

6. McLaren believes that the information requested and issues raised in this Objection should be provided and addressed in the Disclosure Statement.

Wherefore, McLaren requests that approval of the Disclosure Statement be denied pending the addition of information responsive to this Objection.

Respectfully submitted,

ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.


BY: */s/ Julie Beth* Teicher
    JULIE BETH TEICHER (P34300)
    Counsel for McLaren Long Term Care Pharmacy
    400 Galleria Officentre, Suite 444
    Southfield, MI 48034
    (248) 827-4100
    jteicher@ermanteicher.com

DATED:    August 9, 2016

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION (Flint)

In re:

FERGUSON CONVALESCENT HOME, INC.,

  Debtor.
_____/

Chapter 11
Case No. 16-30397-dof
Hon. Daniel S. Opperman

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 9, 2016, the Objection to Debtor's Disclosure Statement by McLaren Long Term Care Pharmacy and Certificate of Service were electronically filed with the Clerk of the Court for the United States Bankruptcy Court, Eastern District of Michigan, Southern Division using the CM/ECF System, which will send notification of such filing to all attorneys and parties of record registered electronically.

      ERMAN, TEICHER, ZUCKER & FREEDMAN, P.C.

      BY: */s/ Julie Beth* Teicher
        JULIE BETH TEICHER (P34300)
        Counsel for McLaren Long Term Care Pharmacy
        400 Galleria Officentre, Suite 444
        Southfield, MI 48034
        (248) 827-4100
        jteicher@ermanteicher.com

DATED: August 9, 2016

1