UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

In Re:

FERGUSON CONVALESCENT   Chapter 11
HOME, INC.              Case No. 16-30397-dof
        Debtor.         Hon. Daniel S. Opperman

_____/

# THE STATE OF MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES' OBJECTIONS TO DEBTOR'S SECOND AMENDED COMBINED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT (DOC. 119)

The State of Michigan Department of Health and Human Services (MDHHS) appreciates that many of its objections to the Debtor's First Amended Combined Plan and Disclosure Statement have been addressed and resolved. Nevertheless, it respectfully objects to the Debtor's Second Amended Combined Plan of Liquidation and Disclosure Statement ("Combined Plan") insofar as it pertains to MDHHS and the Medicaid program for these reasons:

I. **The Combined Plan still inappropriately seeks to curtail MDHHS' rights under federal and state Medicaid law and its enrollment agreement with the Debtor.**

MDHHS administers the jointly funded state-federal program under 42 U.S.C. §§ 1396 *et seq.*, known as Medicaid. Medicaid covers

certain health care expenses on behalf of eligible indigent individuals. MDHHS' Proof of Claim states that the Debtor is currently indebted to MDHHS for about $625,000. (Claim No. 7, as amended.)

In its Second Amended Combined Plan, the Debtor proposes to assume its Medicaid provider enrollment agreement. (Sec. 10.1.1.) But, it also seeks to prevent MDHHS from exercising its right to set off or recoup from the Debtor in accordance with that agreement. See *In re Advanced Professional Home Health Care, Inc.,* 94 Bankr. 95, 97 (E.D. Mich. 1988). More explicitly, the Second Amended Combined Plan, § 5.2, seeks to enjoin MDHHS from setting off or recouping unpaid taxes from the Debtor, Purchaser, Liquidation Trust, or Liquidation Trust. In so doing, Debtor apparently seeks to eliminate MDHHS' defenses and claims relating to its Medicaid program.

Medicaid parallels many of Medicare's requirements.[1] With respect to the amounts that may be paid, the Medicare statute provides:

---

[1] "Because both the Medicare and Medicaid Programs provide for the recovery of overpayments, common law recoupment claims are a recurring theme in bankruptcy cases involving health care providers. *See, e.g., TLC Hosp.,* 224 F.3d 1008*; United States v. Consumer Health Servs. of Am.,* 323 U.S. App. D.C. 336, 108 F.3d 390 (D.C. Cir. 1997); *University Med. Ctr. v. Sullivan (In re University Med. Ctr.),* 973 F.2d

2

> The Secretary shall periodically determine the amount which should be paid under this part to each provider of services with respect to the services furnished by it, and the provider of services shall be paid, at such time or times as the Secretary believes appropriate (but not less often than monthly) and prior to audit or settlement ... the amounts so determined, with necessary adjustments on account of previously made overpayments or underpayments.

42 U.S.C. § 1395g(a).

Bankruptcy courts have recognized that § 1395g(a) is Congress' basic blueprint for Medicare reimbursement. "There is no evading it or circumventing it, under any authority or at any time." *In re Tri County Home Health Services, Inc.,* 230 B.R. 106, 112 (Bankr. W. D. Tenn. 1999). A bankruptcy court "may not interfere with . . . the statutory prescription that [the Secretary] make 'necessary adjustments' to current payments to account for previously rendered overpayments." *In re Southern Inst. for Treatment & Evaluation*, 217 B.R. 962, 966 (Bankr. S.D. Fla. 1998).

Medicaid's right of recoupment arises under 42 U.S.C. § 1396b(d)(2)(C).[2] The Courts have thus adopted reasoning similar to

---

1065 (3d Cir. 1992)." *In re Dist. Mem'l Hosp. of Southwestern N.C., Inc.*, 297 B.R. 451, 454 (W.D. N.C., 2002).
[2] This section also provides that the U.S. Department of Health & Human Services Centers for Medicare & Medicaid Services (CMS) may

that applied in Medicare cases when they address a State's Medicaid program, e.g., permitting the Indiana Medicaid agency to recoup funds from a nursing home. *In re CDM Management Services, Inc.,* 226 B.R. 195 (Bkrty. S.D. IN, 1997).

In addition, MDHHS explicitly incorporates the Medicare Principles of Reimbursement into its Medicaid enrollment agreement. (See Medicaid Provider Manual, Nursing Facility section, Cost Reporting and Reimbursement App'x, § 1.2.) One of these principles, 42 C.F.R. § 489.18(c), establishes the presumption that the enrollment agreement will be assumed by the purchaser: "When there is a change of ownership as specified in paragraph (a) of this section, the existing provider agreement will automatically be assigned to the new owner." Like Medicare, a Medicaid program may thus assert recoupment:

> Equitable principles support recoupment in this case. As noted above, the Medicaid system is premised on continuous payments and reconciliations that span fiscal years. This system gives those providers the cash flow they need to furnish services throughout the year. Over-payments occur routinely. It would be inequitable to deny the State the right to recoup those overpayments from current reimbursements when the Medicaid provider continues to receive the benefits of the Medicaid program. [*Ravenwood Healthcare, Inc v.*

---

adjust its matching funds to the State to reflect overpayments or underpayments.

*Maryland*, 2007 U.S. Dist. LEXIS 40796 (D. Md. 2007), at *18-*19.]

Therefore, any order transferring the Debtor's Medicaid provider agreement may not be made "free and clear" of the Secretary's right to make the "necessary adjustments" required by 42 U.S.C. § 1395g(a)(see Second Amended Combined Plan, §§ 1.2.5, 4.1, 4.3, 4.6), or of MDHHS' parallel right under 42 U.S.C. § 1396b(d)(2)(C). A debtor does not have *carte blanche* to create or impose any conditions it desires in a sale. Indeed, "[t]he purpose of bankruptcy is not to permit debtors or non-debtors to wrest competitive advantage by exempting themselves from the myriad of laws that regulate business." *In re White Crane Trading Co.*, 170 B.R. 694, 702 (Bankr. E.D. Cal. 1994) (bankruptcy court could not authorize sale that would be inconsistent with consumer protection laws). See also *In re Welker*, 163 B.R. 488 (Bankr. N.D. Tex. 1994) (trustee could not sell real property without complying with procedures of U.S. Dep't of Housing and Urban Development).

In this vein, the Debtor cannot meet 11 U.S.C. § 363(f)(1), because applicable non-bankruptcy law does not authorize a free and clear transfer. *U.S. v. Vernon Home Health, Inc.,* 21 F. 3d 693, 696 (5th Cir. 1994), *cert. denied*, 513 U.S. 1015 (1994)("[A]ny purchase of assets that

5

involves the assignment of the [Medicare] provider agreement is subject to the relevant statutory and regulatory conditions. One of these conditions is that adjustments are made for overpayments, pursuant to 42 U.S.C. § 1395g(a)."). By the same token, when the Debtor enrolled in the Medicaid program, it agreed to abide by the Social Welfare Act. Mich. Comp. L. §§ 400.1 *et seq*. One of that Act's provisions, Mich. Comp. L. § 400.111b(24), requires providers to repay overpayments. And, by broadly defining "provider," this section authorizes MDHHS to recover Medicaid overpayments from a provider's owners and officers.

MDHHS also does not consent to a free and clear transfer. Its statutory mandate to make "necessary adjustments" to payments is not an "interest" in property, much less a lien, rendering 11 U.S.C. §§ 363(f)(2) and (f)(3) inapplicable. Likewise, 11 U.S.C. § 363(f)(4) is satisfied only if the "interest" is in *bona fide* dispute, but even assuming *arguendo* that the "necessary adjustments" term of 42 U.S.C. § 1395g(a) and 42 U.S.C. § 1396b(d)(2)(C) constituted an "interest in property," there is no *bona fide* dispute about the existence of the "necessary adjustments" directive since that is clear from the text of the statute.

6

Finally, under 11 U.S.C. § 363(f)(5), a sale of a debtor's property may be authorized free and clear of any interest *if* the holder of that interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  No legal or equitable proceeding could compel MDHHS to accept money to disregard or abrogate the statute by which Congress has directed its actions in running the Medicaid program.  See *Maryland Dept. of Human Resources*, 976 F. 2d at 1480 ("An injunction may not strip a federal agency of its power to exercise lawful authority conferred by Congress through statute.").

Operating under its parallel authority, MDHHS' Medicaid program is entitled to the same protection as CMS' Medicare program. The Second Amended Combined Plan should therefore be rejected if construed to limit MDHHS' right to recoup from any current or future *Medicaid* payments, adding clarifying language to make explicit that any transfer does not eliminate that right.

## CONCLUSION

For these reasons, MDHHS asks that this Court grant its objections and deny approval of the Second Amended Combined Plan and Disclosure Statement.

Respectfully submitted,

Bill Schuette
Attorney General

/s/ William R. Morris
Assistant Attorney General
Attorneys for Michigan
Department of Health and
Human Services
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
MorrisW@michigan.gov
P31957

Date: December 13, 2016

## PROOF OF SERVICE (E-FILE)

I hereby certify that on December 13, 2016, I electronically filed the foregoing document(s) with the Clerk of the Court using the ECF System, which will provide electronic notice and copies of such filing of the following to the parties: State's Objections to Debtor's Second Amended Combined Plan of Liquidation and Disclosure Statement.

/s/ William R. Morris
Assistant Attorney General
Attorneys for Michigan
Department of Health and
Human Services
Health, Education & Family
Services Division
P.O. Box 30758
Lansing, MI 48909
(517) 373-7700
MorrisW@michigan.gov
P31957